BENJAMIN G. WILDER *vs.* WILLIAM ADAMS & another.

B., the owner of a patent right for making fireproof safes, granted to A. the exclusive right
of making and vending the same in New England; and A., in consideration thereof, agreed
by indenture with B. to keep a true account of the number of "said safes," and the weight
of each, made or sold by him, and to pay B. one cent a pound on the weight of "said
safes so sold;" that "all safes" made or sold by A., "consisting of a double case or box,
with the intermediate space filled with plaster or other non-conducting substance, shall be
considered as coming within this agreement, and accounted for as above stipulated;"
that A. would not carry on the manufacturing of "said safes" out of the city of Boston
and its environs, without B.'s consent, nor offer "any such safes" for sale out of New
England, and would furnish a sufficient supply of "said safes" for the demand therefor
in New England at a limited price, made of good material and in a workmanlike man-
ner; and that "the safes sold under the said license" should be marked with the name
of B.'s patent; and the parties mutually agreed that any discovery or improvement in the
manufacture of "said safes," that might be acquired by either, should be communicated
to and be for the benefit of the other, whether patented or not; and that they would
bear equally the expense of any suit that might be instituted by either in New England
for infringement of the patent. The specification of the patent covered only safes filled
with plaster of Paris. *Held,* that A. was bound to account to B. for all safes man-
ufactured and sold by A., not constructed in conformity with the specification, and in
which the intermediate space was filled with any non-conducting substance, though
substantially and materially different from plaster of Paris. *Held, also,* that B. was
entitled to receive one cent per pound of the weight of all safes, made in infringement
of the patent, for which suits had been brought and damages recovered at their joint
expense.

ACTION OF CONTRACT upon an indenture executed on the 23d
of September 1843, between the plaintiff of the first part, and
the defendants, William Adams and Artemas Hammond, of the
second part, by which, in consideration that the plaintiff by his
license of even date, (the body of which is copied in the mar-
gin,*) granted and assigned to the defendants "the exclusive

---

* Be it known, that whereas the undersigned, Benjamin G. Wilder, of
Mamaroneck in the State of New York, is proprietor of a patent granted to
Daniel Fitzgerald on the first day of June eighteen hundred and forty three,
for an improvement in fireproof chests or safes, patented as the Salamander Safe,
said Wilder hereby, in consideration of the agreement this day made by said
Wilder, on the one part, William Adams and Artemas Hammond, on the other
part, grants and assigns to Adams & Hammond the exclusive right and privi-
lege of making and vending said safes in the New England States, for and
during the unexpired period of said patent, and for such period as the same
may be renewed or continued for; this license being given however subject to
the condition that said Adams & Hammond shall comply with and fulfil said

right and privilege of making and vending in the New England States the fireproof chests or safes, commonly known as the Salamander Safe, for which a patent was granted to Daniel Fitzgerald on the first of June 1843 — said license being for and during the period for which said patent is granted, and for such period as the same may be renewed or continued for — said Adams & Hammond, for themselves and their respective executors and administrators, hereby covenant and agree with said Wilder, his executors and administrators, to keep a true account of the number of said safes made and the number sold; which account shall be open to the inspection of said party of the first part at all convenient times; and at the expiration of every month, on request made to said parties of the second part, or either of them, to render an account by mail, addressed as said party of the first part shall direct, or to such person in Boston as he may nominate, a true account of the number of said safes, and the weight of each, made or sold by them or either of them, or under the authority or with the consent of them or either of them, during the then preceding month, or subsequently to the date of the preceding account rendered, and of the names of the persons to whom the same shall have been sold; and to pay to said Wilder one cent per pound on the weight of said safes so sold during such period. And all safes made by said Adams & Hammond, or either of them, or in the making or selling of which they or either of them shall be concerned, consisting of a double case, or box, with the intermediate space filled with plaster or other non-conducting substance, shall be considered as coming within this agreement, and accounted for as above stipulated.

agreement on their part; the same being the only agreement of even date herewith between said parties, and being witnessed by the same subscribing witnesses as this license. And on the failure of said Adams & Hammond, at any time, to comply with and fulfil said agreement on their part, this license is thereupon to become null and void, and the exclusive right and privilege thereby granted is thereupon to revert to said Wilder, his executors, administrators, and assigns ; but such forfeiture is not to bar or defeat his right of action, remedy, or claim for damages on said agreement, which said Wilder, his executors, administrators, or assigns, might otherwise have had.

" Said Adams & Hammond agree not to carry on the manufacturing of said safes out of the city of Boston and its environs, without the consent of said Wilder or his assigns ; and not to offer, or directly or indirectly authorize, consent to, or promote, or be concerned in the offering of, any such safes for sale out of the New England States.　Said Adams & Hammond further agree to furnish a sufficient supply of said safes for the demand therefor in New England, at a price not exceeding twelve and one half cents per pound, besides extra work and improvements, the same to be made of good materials, in a workmanlike manner; it being understood that they are not bound to offer them on sale in any other places than Boston, but that they may offer them in other places in New England in case they deem it advantageous so to do,　The safes sold under the said license are to be marked ' Wilder's Patent Salamander Safe.'

" The parties of the second part further agree not to give any license for making said safes, without the written authority or consent of the party of the first part.　And it is mutually agreed by said parties, that any discovery or improvement in the manufacture of said safes that may be made, purchased or acquired, by either of the parties hereto, or the assigns or representatives of either, shall by such party be communicated to the other party ; and that such other party shall be entitled to the benefit thereof during the continuance of said license, without payment of any additional consideration therefor, whether such improvement or discovery shall be patented or not.

" It is further mutually agreed by the parties, that they will bear equally the expense of any suit that may be instituted by either in any of the New England States for any infringement of said patent; and that the party, before instituting any such suit, shall give notice to the other of the intended institution of the same, and give the opportunity to join in the prosecution of the same ; and neither party shall allow, by his consent, judgment in such suit to be rendered against the patentee, or any one claiming under him, on the ground of the invalidity of said patent.

" And it is further agreed by said parties, that, in case final

judgment shall be given against said patentee, or any claiming under him, in any suit in any part of the New England States, on the ground of the invalidity of said patent, said Adams & Hammond shall, from and after the rendering of such judgment, be exonerated and discharged from this agreement as to any subsequent sales of said safes, but that they are not thereby to be exonerated and discharged from any payment that may become due under this agreement previously to the rendering of such judgment."

The declaration contained two counts; the first for fraudulently refusing to render any account of the sales made or the moneys received under the indenture; and the second for the one cent per pound on the weight of each of the safes, made by third parties in infringement of the patent, and for which infringements damages had been recovered and received by the defendants in suits brought by them, half of the expenses of which had been paid by the plaintiffs, according to the agreement.

At the trial before *Hoar,* J., it appeared that the safe for which the letters patent had been granted, as described in the specification annexed to them, consisted of two chests or boxes, one inside of the other, with the intermediate space filled with plaster of Paris, either alone, or with sheets of mica in it; that the defendants had duly accounted and paid for all the safes manufactured by them, between the date of the agreement declared on and the date of the writ, which were constructed in conformity with the specification; but that between those dates the defendants had manufactured and sold some safes consisting of a double case or box, with the intermediate space filled with hydraulic cement, which could be made and sold at a profit if a royalty was not payable to the plaintiff, but at no profit if it was, and which, it was agreed, were not constructed in conformity with the specification; hydraulic cement, though an imperfect conductor of heat, being substantially and materially different as a non-conducting filling for safes from the filling described in the specification; that for these safes the defendants had refused to account, and that they had also received certain sums, as alleged in the second count of the declaration.

For the purpose of settling the questions of law involved, the judge directed a verdict for the defendants, and reported the case for the consideration of the full court.

*C. Browne*, for the plaintiff, cited, on the question of the construction of the agreement, *Heywood* v. *Perrin*, 10 Pick. 230 ; *Jones* v. *Lees*, 1 H. & N. 189; *Brancker* v. *Molyneux*, 1 Scott N. R. 563, 565; *Deriemer* v. *Fenna*, 7 M. & W. 439; 2 Parsons on Con. 26, and cases cited.

*B. R. Curtis & J. A. Andrew*, for the defendants, cited *Barton* v. *Fitzgerald*, 15 East, 541; *Martin* v. *Wright*, 6 Ad. & El. N. R. 917; *Kendall* v. *Almy*, 2 Sumner, 293; *Warren* v. *Merrifield*, 8 Met. 96; Broom's Max. (3d ed.) 523; 2 Parsons on Con. 13.

HOAR, J. 1. The principal question in this case is whether the provision in the contract between the parties, that "all safes made by said Adams & Hammond, or either of them, or in the making or selling of which they or either of them shall be concerned, consisting of a double case or box, with the intermediate space filled with plaster or other non-conducting substance, shall be considered as coming within this agreement, and accounted for as above stipulated," applies to safes so constructed, and filled with hydraulic cement, or is to be confined in its application to safes filled in whole or in part with plaster. The contract is of even date with a license from the plaintiff to the defendants to manufacture safes under a patent held by the plaintiff; and the specification annexed to the patent includes only safes filled with plaster of Paris, or with plaster of Paris and sheets of mica. It is agreed that hydraulic cement, though an imperfect conductor of heat, and thus included in the phrase "non-conducting substance," differs substantially, as a filling for safes, from the material described in the specification. The defendants claim that the words "filled with plaster or other non-conducting substance" are to be interpreted as having the same meaning with "plaster, or its equivalent under the patent;" and they argue that "other non-conducting substance" either refers simply to the plaster mixed with mica, described in the specification, or is used to embrace such future substitute for the plaster filling as might afterward be discovered by the patentee.

The strength of the argument on that side of the case is found in the consideration that the object of the agreement is to regulate and prescribe the terms upon which the patented safes may be made and sold under the patent; that most of its clauses could have no proper application to any safes other than those protected by the patent; and that the expression, " said safes," which follows and includes the safes referred to in the clause in controversy, as well as those for which the license is given, is used in the agreement not to manufacture outside of Boston and its environs, in the agreement not to sell out of New England, and in the agreement to furnish a full supply for the New England market; and that these stipulations could have no reasonable application to any other safes than those protected by the patent.

While there is much force in these suggestions, and the true meaning of the parties may not be wholly free from doubt, we think the reasons for the construction adopted by the plaintiff are on the whole stronger and more decisive.

The language of the clause in question, in its literal and obvious meaning, includes the safes filled with hydraulic cement. If no other than the patented safes were intended, there could be no need of such a clause, as full provision was already made for the account to be rendered of them. When the stipulation for marking the safes is introduced, the language is changed, and instead of "said safes," we find the limitation, " the safes sold under the said license." It is also apparent that the plaintiff might have a motive to guard against the manufacture of inferior safes, which might come into injurious competition with those which were to be made under the license; and an agreement for an equal payment to be made for each might secure this important protection. Indeed it is shown by the facts agreed at the trial that the manufacture of the safes filled with hydraulic cement could be profitably carried on if no payment were made upon them under the contract, but that it would be unprofitable if such payment were exacted.

We think therefore that, while the phrase "said safes" may have been only intended to refer to those which had been

chiefly the subject of description and agreement before mentioned, and not to those which had been included in the obligation to account as a supplemental and distinct class, yet if the latter were held to be included, as in strict grammatical construction they would be, no such unreasonable consequences would follow as to induce us to give a construction to the phrase "other non-conducting substance" more limited than its natural import.

2. We are also of opinion that the plaintiff may maintain his action, upon proof of the facts alleged in the second count of the declaration. The money recovered by the defendants as damages for making and selling the patented safes was, by a just construction of the agreement, in part money received to the plaintiff's use. The judgment for damages would vest in the defendants in that suit, or their vendees, the right to use the specific article, for the making of which in violation of the patent damages were assessed. This right was the one sold by the plaintiff to the defendants under the license, for each exercise of which payment was to be made. If a person had tortiously taken a manufactured safe from the defendants, and an action were brought, and the value of the safe recovered by them, this would certainly be equivalent to a sale, and certainly ought to subject them to the payment which they had contracted to make to the patentee in case of a sale. Beside, the agreement provides for bringing suits for violations of the patent at the joint expense of the parties — thus recognizing a joint interest in the subject matter of the suit. But the amount which the plaintiff can recover will depend materially upon the fact whether he did contribute to the expenses of the suit; if he did not, it will only be the net proceeds of the suit, after deducting all costs and expenses, in which he would have any claim to participate; and in those, only in the proportion of the royalty at the rate of one cent a pound to the whole damages recovered.

If the suit were brought by the defendants alone, and at their own expense, there might be circumstances which would justify the jury in finding that the plaintiff had consented that they should bring it at their own risk and for their own exclusive benefit. *Verdict set aside, and new trial granted.*